**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

United States District Court
Southern District of New York

1:19-cv-06571

| | |
|---|---|
| Alan Charles, Jane Doe, individually and on behalf of all others similarly situated | |
| Plaintiffs | Class Action Complaint |
| - against - | |
| Friendly's Manufacturing and Retail, LLC | |
| Defendant | |

Plaintiffs by attorneys alleges upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1.      Friendly's Manufacturing and Retail, LLC ("defendant") manufactures, distributes, markets, labels and sells ice cream products labeled as types of, or containing vanilla ice cream under the Friendly's brand.

2.      The Products are available to consumers nationwide from third-party retailers, including brick and mortar and online stores, directly from defendant's website and from Friendly's Restaurants in sizes including cartons (1.5 QT/1.42L) and cups (8.5 oz./251 mL).

3.      The product varieties include (1) Cakes, (2) Cartons (Signature Sundaes, Naturally Friendly's, Rich & Creamy, Limited Edition, SundayXtreme, Light) (3) Cups (Sundae and Dessert), (4) Rolls, (5) Bars, (6) Cones, (7) Sandwiches ("Friendwiches") and (8) Big Friendly's.

4.      At any given time, defendant sells approximately one hundred (100) flavors of ice cream across at least eight product types or lines.

1

5.      At least fifty-seven (57) of the Products contain vanilla ice cream or vanilla light ice cream, whether exclusively or as part of an ice cream combination.

6.      The table below is a non-exhaustive list of the Products which are represented as containing vanilla ice cream.

| Rich & Creamy | Light | Dessert Cups | Sundae Cups |
|---|---|---|---|
| Cherry Vanilla | Vanilla | Blackberry Peach Pie | Original Caramel |
| Chocolate 'N Vanilla | | Pecan Praline | Strawberry Cake Krunch |
| Cookies 'N Cream | | Strawberry Shortcake | |
| Fruit Swirls Orange Crème Swirl | | | |
| Homemade Vanilla | | | |
| Vanilla | | | |
| Vanilla/Chocolate/Strawberry | | | |

7.      The front labels of the exclusively vanilla ice cream varieties contain common relevant representations including (1) **flavor** – vanilla (first row), (2) ice cream and light ice cream, (3) three scoops of the ice cream type and (4) *statements of identity* consisting of "Vanilla" + " (Light) Ice Cream" (second row), because the products purport to be flavored exclusively from vanilla beans.

| **Vanilla** | **Vanilla** |
|---|---|
| *Vanilla Ice Cream* | *Vanilla Light Ice Cream* |

 

8.     Examples of front labels of the non-exclusively vanilla ice cream varieties contain common relevant representations including (1) **flavor** (first row), (2) images of ice cream type – scoops or sundae and (3) *statements of identity* (second row), which indicate the products purport to contain vanilla ice cream, and such component is understood and expected to be flavored exclusively from vanilla beans.

**Cherry Vanilla**                                    **Blackberry Peach Pie**

*Cherry Vanilla Ice Cream*              *Layers of pie crust pieces, peach pie filling, and vanilla ice cream, topped with blackberry sauce, whipped topping and streusel crumble.*

   

I.   Vanilla Ice Cream is Perennial Favorite Flavor

9.     Ice cream is a year-round treat enjoyed by 96% of Americans.[1]

10.    Its popularity is attributed "to the perfect combination of elements – sugar, fat, frozen water, and air – that make up the mouthwatering concoction."[2]

11.    Of all the flavors, vanilla is the perennial number one for 28% of consumers, confirmed the two groups who supply ice cream – the International Dairy Foods Association

---

[1] Arwa Mahdawi, The big scoop: America's favorite ice-cream flavor, revealed, The Guardian, July 11, 2018
[2] Vox Creative, The Reason You Love Ice Cream So Much Is Simple: Science, Eater.com.

(IDFA) (ice cream producers) and National Ice Cream Retailers Association (ice cream parlors).

12.    The reasons for vanilla's staying power is "not only because it is creamy and delicious, but also because of its ability to enhance so many other desserts and treats."[3]

13.    The applications of vanilla ice cream include as the centerpiece of an ice cream sandwich (vanilla ice cream between chocolate wafers), topping a warm slice of oven-fresh apple pie, in a hot fudge Sunday or dunked in a cold frothy glass of root beer (float).[4]

14.    By some estimates, approximately two-thirds of "all ice cream eaten is either vanilla or vanilla with something stirred into it, like chocolate chips."[5]

15.    Thomas Jefferson, who had the foresight to write the Constitution, had a similar intuition when he wrote the first American recipe for vanilla ice cream, his preferred flavor.[6]

II.  Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

16.    In 1908, E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[7]

17.    Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or

---

[3]Press Release, IDFA, Vanilla Reigns Supreme; Chocolate Flavors Dominate in Top Five Ice Cream Favorites Among Americans, July 1, 2018
[4] The True Wonders of Vanilla Ice Cream, FrozenDessertSupplies.com.
[5]Bill Daley (the other one), Which vanilla ice cream is the cream of the crop? We taste test 12 top brands, Chicago Tribune, July 18, 2018
[6] Thomas Jefferson's Handwritten Vanilla Ice Cream Recipe, Open Culture, July 13, 2014; Thomas Jefferson's Vanilla Ice Cream, Taste of Home, June-July 2012; Thomas Jefferson's Original Vanilla Ice Cream Recipe, Jefferson Papers, Library of Congress.
[7] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein, "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.

for its desirable aroma qualities."[8]

18.     Due to its versatility, demand and high value, there have been continual attempts to dilute, adulterate and "extend" vanilla.[9]

19.     The global landscape since The Pure Food and Drugs Act, enacted in 1906 to "protect consumer health and prevent commercial fraud," has changed little.[10]

20.     Daily headlines alert us to this resurgent international threat of "food fraud"– whether olive oil made from cottonseeds to the horsemeat scandal in the European Union.[11]

21.     Food fraud encompasses addition of "small amounts of a non-authentic substance" to cover up inferior ingredients or give the impression a product contains more of the higher quality ingredients than it actually does.

22.     As the world's second most expensive flavoring ingredient (after saffron), there is a strong incentive for unscrupulous actors to mimic real vanilla by "passing off" inferior, cheaper synthetic substitutes, through replacement of valuable, botanically-derived natural vanillin with less expensive and lower quality components.

23.     The range of deceptive tactics to make consumers think they are getting only real vanilla include:

- addition of synthetically produced ethyl vanillin derived from wood pulp, tree bark or coal tar;

- blending with harmful compounds such as coumarin, determined by the FDA at one

---

[8] D. Havkin-Frenkel, et al. "A comprehensive study of composition and evaluation of vanilla extracts in US retail stores," Handbook of Vanilla Science and Technology (2019): 349-366)
[9] "Extend" in the context of flavoring is a modern and polite way to say "dilute" or "adulterate" – to make what is being "extended" go farther.  Since "dilute" and "adulterate" have a deserved negative connotation, the flavor industry and technical trade literature use the euphemistic term, "extend."
[10] Berenstein, 412.
[11] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019).

point to be a toxin;

- "extending" with propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[12];

- "extending" with a variety of flavoring substances with no connection or sensory resemblance to authentic vanilla beans;

- addition of Tonka beans, which are banned from entry to the United States;

- color additives like caramel coloring to enhance the color of an imitation vanilla so it more closely resembles real vanilla[13]

24.   Food fraud also encompasses subtle, yet deliberate misidentification and obfuscation of a product's components as they appear on the ingredient list ("ingredient list deception").

25.   Though mainstream commentators naively promote the "ingredient list" as part of the label unaffected by marketing and promotion, this "neutral" and "factual" space has become the most recent contested space, to the detriment of consumers.

III. Requirements Exist to Protect Consumers from Vanilla Imitation and Dilution

26.   To protect consumers from being deceived by products that purport to contain vanilla but do not or contain less vanilla, standards were developed to require it be labeled accurately and conform with consumer expectations.[14]

27.   For almost half a century, consumers have expected vanilla ice cream to contain real

---

[12] Berenstein, 423.
[13] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.
[14] 21 C.F.R. § 169.175-182.

vanilla derived from vanilla beans as the exclusive source of the flavor – designated as vanilla flavor or vanilla extract on the ingredient list ("Category 1").[15]

28.    By law, vanilla refers to "the total sapid and odorous principles extractable from one unit weight of vanilla beans."[16]

29.    Vanilla extract and flavor differ only in that the former is at least thirty-five (35) percent ethyl alcohol while the latter is less than this amount.[17]

30.    The Products are represented as, or containing, vanilla ice cream and vanilla light ice cream on the labels, in point-of-sale marketing, retailers' display ads and promotions, websites, television and/or radio ads.[18]

31.    The Products are represented as "Category 1" ice creams by their statements of identity and label representations, indicated in the larger image of the flagship Vanilla Product.



32.    The Products are misleading because despite the expectation their flavoring is exclusively derived from vanilla beans, the ingredient lists reveal otherwise.

---

[15] 21 C.F.R. § 135.110(f)(2)(i); 21 C.F.R. § 169.175-182.
[16] 21 C.F.R. §169.3(c)
[17] 21 C.F.R. §§ 169.175 (Vanilla extract.), 169.177 (Vanilla flavoring.).
[18] 21 C.F.R. § 135.110(f)(6) (applying identical labeling for vanilla ice cream when combined with other flavors, i.e., Neapolitan).

| | | |
|---|---|---|
| Vanilla | VANILLA ICE CREAM INGREDIENTS: MILK, CREAM, CORN SYRUP, SKIM MILK, SUGAR, WHEY PROTEIN CONCENTRATE, WHEY, NATURAL FLAVOR, GUAR GUM, MONO AND DIGLYCERIDES, XANTHAN GUM, CARRAGEENAN, ANNATTO AND TURMERIC EXTRACT (COLOR). | Milk, Cream, Corn Syrup, Skim Milk, Sugar, Whey Protein Concentrate, Whey, Natural Flavor, Guar Gum, Mono And Diglycerides, Xanthan Gum, Carrageenan, Annatto Extract And Turmeric Extract (Color). |

33.    The Product's flavor components are identical across the vanilla-based ice creams.

IV. Natural Flavor is not a Synonym for Vanilla Flavor or Vanilla Extract in the Products

34.    Contrary to the standard ingredient list designation for Category 1 ice cream, the Products do not identify vanilla extract or vanilla flavoring as the flavoring source.

35.    A rule of thumb when faced with general and specific regulations is to use the specific ones – for ice cream and vanilla as opposed to general flavoring.

36.    Defendant's listing of "natural flavor" as opposed to vanilla flavor or vanilla extract is a tacit acknowledgement that the "natural flavor" is not a synonym for the required vanilla ingredients. *Compare* 21 C.F.R. § 101.22 (natural flavor) *with* 21 C.F.R. § 169.175 (Vanilla extract.) and § 169.177 (Vanilla flavoring.).

37.    Additionally, it would be illogical to use a more expensive and higher quality ingredient (vanilla extract or vanilla flavor) but designate it with a general term perceived by consumers to cost less money and appearing on most foods in existence ("natural flavor").

V.  The Standardized Vanilla-Vanillin Ingredients are not Labeled as Natural Flavor

38.    The vanilla standards reference three vanilla-vanillin combinations – Vanilla-vanillin extract, Vanilla-vanillin flavoring and Vanilla-vanillin powder.[19]

---
[19] 21 C.F.R. § 169.180, § 169.181, § 169.182.

39. The standardized vanilla ingredients – vanilla extract, vanilla flavoring, concentrated vanilla flavoring, and vanilla powder – could be understood as complying with the requirements for "natural flavor."[20]

40. The "vanillin" referred to in the standardized combination ingredients is produced from non-vanilla bean materials, like wood pulp or coal tar.

41. While vanillin is a main flavoring component of vanilla, only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant.

42. This type of "natural vanillin" is rarely produced, which means that almost all vanillin is synthetically produced and has no connection to the vanilla bean.

43. For the purposes of ice cream flavor labeling, vanillin (from non-vanilla sources) cannot be designated as a "natural flavor" because it implies it derives from vanilla beans, whose flavor it simulates.[21]

44. This applies even when vanillin is produced through a natural process (fermentation), such that it is properly designated as "vanillin derived naturally through fermentation."

45. This means if a vanilla flavor is derived from any source other than vanilla, it is accurately designated as an artificial flavor.[22]

46. Therefore, the standardized vanilla-vanillin combination ingredients are not the ingredients used in the Products but for some reason, designated as "natural flavor."

VI. "Natural Flavor" Refers to Vanilla With Other Natural Flavors ("Vanilla WONF)

47. While "natural flavor" is a permitted name for the purposes of the ingredient list, it

---

[20] 21 C.F.R. § 169.175 (Vanilla extract.), § 169.176 (Concentrated vanilla extract.), § 169.177 (Vanilla flavoring.), § 169.178 (Concentrated vanilla flavoring.) and § 169.179 (Vanilla powder.).
[21] 21 C.F.R. § 101.22(a)(3)
[22] In contrast to the regulations at 21 C.F.R. § 101.22.

does not describe the flavoring defendant purchases from a supplier.

48.   The natural flavor used will depend on the type of food.

49.   For example, natural flavor listed in an apple juice product will have a more specific name for the purposes of commerce between suppliers and manufacturers (i.e., "Green Apple Flavor") and its specification sheet will list the molecular compounds which comprise this flavor.

50.   Likewise for vanilla ice cream ("Category 1") – when the flavor used is designated by "natural flavor," it means the flavor obtained by the manufacturer consisted of "vanilla flavor with other natural flavors" or "vanilla extract with other natural flavors" ("Vanilla WONF")

51.   In vanilla ice cream, it is misleading to label ingredients which simulate, reinforce and extend vanilla as a "natural flavor" or "Vanilla extract/flavor with other natural flavor" because it misleadingly implies that the flavor is derived from vanilla beans, whose flavor it simulates.[23]

52.   In the context of vanilla ice cream, WONF flavors would be designated where there is "a characterizing flavor from the product [vanilla flavor *from* vanilla] whose flavor is simulated and other natural flavor [synthetic or artificial vanillin] which simulates, resembles or reinforces the characterizing flavor."

53.   No standardized vanilla ingredients provide for "other natural flavors" to be added with a vanilla flavoring or extract because this would result in the spiking of the vanilla flavor, deceiving consumers to believing that more vanilla is present than actually the case, and that all of the vanilla flavor is derived from vanilla beans.

VII. Coloring Reinforces the Deception that the Products are Vanilla Ice Cream

54.   The Products contain "Annatto Extract And Turmeric Extract" for coloring.

---

[23] 21 C.F.R. § 101.22(a)(3)

55.    No allegation is made with respect to how annatto and turmeric are declared as their use is specifically permitted by regulation.[24]

56.    Annatto is used often in cheddar cheese to provides a richer yellow shade evocative of milkfat associated with butter, produced by dairy cattle in the United States.

57.    Turmeric provides an orange-ish tint to the Products.

58.    These colors modify the color of the ice cream to a color closer to vanilla ice cream flavored exclusively by vanilla bean components – a darker shade like in the following stock image.



59.    This coloring makes the consumer (1) less likely to question or probe into the amount and type of vanilla in the Products and (2) expect the Products to be similar to other, accurately labeled vanilla ice cream products.

60.    Competitor brands adjacent to defendant's are labeled as vanilla ice cream and contain the amount and/or type of vanilla required by law and expected by consumers.

<u>Competitor Product</u>                                         <u>Product</u>

---

[24] 21 C.F.R. § 101.22(k)(3)





Cream, Skim Milk, Cane Sugar, Egg Yolks, Vanilla Extract.

Milk, Cream, Corn Syrup, Skim Milk, Sugar, Whey Protein Concentrate, Whey, Natural Flavor, Guar Gum, Mono And Diglycerides, Xanthan Gum, Carrageenan, Annatto Extract And Turmeric Extract (Color).

61.     The Products are misleading because they are marketed as vanilla ice cream adjacent to other vanilla ice cream products which contain vanilla flavoring exclusively from vanilla beans.

62.     Where two similarly labeled products are situated in the same category or section of a store and their representations as to quality and/or fill are identical, yet the former is lacking the quantity of the characterizing ingredient (vanilla) or qualities, the reasonable consumer will be deceived.

63.     Accordingly, the reasonable consumer will and does pay more money for the former product under the false impression that it contains the equivalent amount and/or type of the characterizing ingredients and possesses such qualities.

64.     The proportion of this characterizing component has a material bearing on price or

12

consumer acceptance of the Products because it is more expensive and desired by consumers.

65.    Had Plaintiff and Class members known the truth about the Products, they would not have bought the Product or would have paid less for it.

VIII.    Conclusion

66.    The Products contain other representations which are misleading and deceptive.

67.    As a result of the false and misleading labeling, the Products are sold at premium prices – no less than $6.59 per 1.5 quart (1.42L) (across the Products), excluding tax – compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

68.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

69.    Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

70.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

71.    Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

72.    A substantial part of events and omissions giving rise to the claims occurred in this District.

<u>Parties</u>

73.    Named Plaintiff is a citizen of New York County, New York.

74.    Jane Doe plaintiffs are citizens of the 49 states for which the identity of a named plaintiff has not been disclosed, but who were affected in the same manner as the Named Plaintiffs.

75.     The allegations as related to laws of other states where no named plaintiff has been disclosed serves as a placeholder upon joinder or amendment.

76.     Defendant is a Delaware limited liability company with a principal place of business in Wilbraham, Massachusetts (Hampden County) and its members are citizens of Delaware and Texas.

77.     During the class period, Named and Jane Doe Plaintiffs purchased one or more of the Products for personal use, consumption or application with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

78.     Named and Jane Doe Plaintiffs purchased the Products based upon the representations on the packaging.

79.     Named and Jane Doe Plaintiffs would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

<u>Class Allegations</u>

80.     The classes will consist of all consumers in all 50 states with sub-classes for the individual states.

81.     The present complaint contains Named Plaintiffs from: New York, who will represent his/her/their state sub-classes of persons who purchased any Products containing the actionable representations during the statutes of limitation.

82.     Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if Named and Jane Doe Plaintiffs and class members are entitled to damages.

83.     Named and Jane Doe Plaintiffs' claims and the basis for relief are typical to other members because all were subjected to the same representations.

14

84.    Named Plaintiffs are adequate representatives because their interests do not conflict with other members.

85.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

86.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

87.    Named and Jane Doe Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

88.    Plaintiffs seek class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350, California Consumers
Legal Remedies Act, Civ. Code §§ 1750-1785 ("CLRA")
and Consumer Protection Statutes of Other States and Territories

89.    Named and Jane Doe Plaintiffs assert causes of action under the consumer protection statutes of the all 50 states, with Named Plaintiff asserting the consumer protection laws of his or her individual state.

a.    Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;
b.    Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;
c.    Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521 *et. seq.*;
d.    Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;
e.    California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;
f.    Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;
g.    Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;
h.    Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;
i.    District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;
j.    Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes*§ 501.201, *et. seq.*;
k.    Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;
l.    Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;
m.    Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;
n.    Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;
o.    Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-1 *et. seq.*;
p.    Iowa Code §§ 714.16 *et. seq.*;

q.  Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;

r.  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;

s.  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;

t.  Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

u.  Maryland Consumer Protection Act, Md. Code, Com. Law § 13-101 *et seq.*;

v.  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;

w.  Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;

x.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;

y.  Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;

z.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;

aa. Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

bb. Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;

cc. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;

dd. New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

ee. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

ff. New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

gg. New York General Business Law ("GBL") §§ 349 & 350;

hh. North Carolina

ii. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

jj. Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

kk. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

ll. Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);

mm. Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1 *et. seq.*;

nn. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;

oo. South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

pp. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

qq. Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;

rr. Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41 *et. seq.*;

ss. Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1 *et. seq.*;

tt. Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

uu. Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196 *et. seq.*;

vv. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

ww. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

xx. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*; and

yy. Wyoming Consumer Protection Act, Wyo. Stat. Ann.§§ 40-12-101 *et. seq.*;

90.     Named Plaintiffs and Jane Doe Plaintiffs and class members assert causes of action under the consumer protection laws of their States, *supra*.

91.     Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair.

92.     Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

93.     Named Plaintiffs and Jane Doe Plaintiffs and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

94.     After mailing appropriate notice and demand, Named and/or Jane Doe Plaintiffs who reside in a State where notice is required prior to seeking damages under that State's Consumer Protection Statutes, will have mailed and/or have amended this complaint to request damages. Cal. Civil Code § 1782(a), (d); Mass. UDAP, Mass. Gen Laws ch. 93A, etc.

95.     Named and/or Jane Doe Plaintiffs from California will seek injunctive and equitable relief and attorney fees for that State's sub-class for CLRA violations. Civ. Code § 1780(a); Cal. Bus. & Prof. Code § 17203.

96.     The representations and omissions were relied on by Named and Jane Doe Plaintiffs and class members, who paid more than they would have, causing damages.

<u>Negligent Misrepresentation</u>

97.     Named and Jane Doe Plaintiffs and class members incorporate by reference all preceding paragraphs.

98.     Defendant misrepresented the misrepresented the substantive, quality, compositional, health, organoleptic and/or nutritional attributes of the Products.

99.     Defendant had a duty to disclose and/or provide non-deceptive labeling of the

17

Products and knew or should have known same were false or misleading.

100.  This duty is based on defendant's position as an entity which has held itself out as having special knowledge in the production, service and/or sale of the product type.

101.  The representations took advantage of cognitive shortcuts made by consumers at the point-of-sale and their trust placed in defendant, a well-known and widely recognized and respected brand in this sector for the type of products.

102.  Named and Jane Doe Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

103.  Named and Jane Doe Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Breach of Express Warranty and Implied Warranty of Merchantability,</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

104.  Named and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

105.  Defendant manufactures and sells products which contain a characterizing ingredient or flavor which is desired by consumers.

106.  The Products warranted to Named Plaintiffs and Jane Doe Plaintiffs and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

107.  Defendant had a duty to disclose and/or provide a non-deceptive description of the Products and knew or should have known same were false or misleading.

108.  This duty is based, in part, on defendant's position as one of the most recognized manufacturers of foods containing the characterizing ingredient or flavor in the world, and based on the goodwill associated with the Friendly's Restaurant Business, where consumers expected to,

and did, receive products which contained the characterizing ingredients or flavors in the amount and/or type expected and required.

109.   The Products warranted to Named and Jane Doe Plaintiffs and class members that the characterizing ingredient, emphasized by the Product's names, labels and website claims and marketing, was (1) derived exclusively *from* that food and (2) contained an amount sufficient to characterize the Products.

110.   Named and Jane Doe Plaintiffs desired to purchase products which were as described by defendant.

111.   The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions and were not merchantable.

112.   To the extent notice may be required, Named and Jane Doe Plaintiffs have or intend to send notice to defendant and reserve all rights to amendment of this complaint.

113.   Named and Jane Doe Plaintiffs and class members relied on defendant's claims, paying more than they would have.

<u>Fraud</u>

114.   Named and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

115.   Defendant's purpose was to sell a product which contained a valuable and desired characterizing ingredient or flavor, and represent the Products were exclusively flavored from that food, and contained sufficient independent amounts of same such that they would accurately be described by the product name, representations and marketing.

116.   Defendant's fraudulent intent is evinced by its failure to accurately identify the Products.

117.   Defendant's intent was to secure economic advantage in the marketplace against

competitors.

118. Named and Jane Doe Plaintiffs and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

Unjust Enrichment

119. Named and Jane Doe Plaintiffs incorporate by references all preceding paragraphs.

120. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Named and Jane Doe Plaintiffs demand a jury trial on all issues.

**WHEREFORE,** Named and Jane Doe Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying named plaintiffs as representatives and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove and/or refrain from the challenged representations, restitution and disgorgement for members of the State Subclasses pursuant to the consumer protection laws of their States;

4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and consumer protection law claims, and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   July 15, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

1:19-cv-06571
United States District Court
Southern District of New York

Alan Charles, Jane Doe individually and on behalf of all others similarly situated

Plaintiff

- against -

Friendly's Manufacturing and Retail, LLC

Defendant

# Class Action Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
   Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: July 15, 2019

/s/ Spencer Sheehan
Spencer Sheehan